**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **Guangdong Aoyun Technology Co Ltd** | **CIVIL ACTION NO. 1:24-cv-12808** |
| **Plaintiff,** | **Honorable Judge Matthew F. Kennelly** |
| **v.** | **JURY TRIAL DEMANDED** |
| **The Partnerships and Unincorporated Associations Identified on Schedule A** | |
| **Defendants.** | |

**DEFENDANTS' MOTION TO DISMISS THE COMPLAINT AND**
**INCORPORATED MEMORANDUM OF LAW**

Defendants Warm Embrace of Fandliss Store (No. 3) and TY-US Co. Ltd (No. 8) (collectively, "**Defendants**" or the "**Moving Defendants**") respectfully seek dismissal of the Complaint (Dkt. 1) with prejudice for insufficient service of process and failure to state a claim upon which relief can be granted pursuant to FED. R. Civ. P. 12(b)(5) and (6), and in support state:

**INTRODUCTION**

On December 12, 2024, Plaintiff Guangdong Aoyun Technology Co Ltd ("**Plaintiff**") filed the Complaint against 8 defendants, alleging infringement of Plaintiff's U.S. Patent No. 12,115,099 (the "099 Patent"). Dtk. 1.

On January 27, 2025, Plaintiff allegedly served process on the Moving Defendants by email and electronic publication pursuant to Fed. R. Civ. P. 4(f)(3). Dkt. 19.

The Moving Defendants now seek dismissal of the Complaint for two main reasons. First, none of the Moving Defendants has been properly served with sufficient process in compliance with the Hague Convention. Second, Plaintiff's Complaint, failing the Twombly/Iqbal pleading standard, provides "mere labels and conclusions or a formulaic recitation of the elements of a cause of action," and therefore should be dismissed for failure to state a claim that is plausible on its face. *Kaminski v. Elite Staffing*, Inc., 23 F.4th 774, 776 (7th Cir. 2022).

## ARGUMENTS

### I.  The Moving Defendants Have Been Improperly Served with Deficient Process in Violation of the Hague Convention.

In the ex parte Motion for Electronic Service of Process (Dkt. 9), Plaintiff relied on Fed. R. Civ. P. 4(f)(3) to seek the Court's authorization to serve Defendants by email and electronic publication. Fed. R. Civ. P. 4(f)(3) authorizes service "by other means not prohibited by international agreement, as the court orders." The relevant international agreement in the instant case is the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163 (the "**Convention**," the "**Hague Convention**," or the "**Hague Service Convention**"), which prohibits service of process on the Moving Defendants located in China via email and/or electronic publication.

#### A.  The Hague Convention Applies in the Instant Case.

The Hague Service Convention, to which both the United States and China are parties, was adopted in 1965 to "simplify, standardize, and generally improve the process of serving documents abroad." *Water Splash, Inc. v. Menon*, 581 U.S. 271, 273, 137 S. Ct. 1504, 197 L.Ed.2d 826 (2017); *see Status Table*, Hague Conf. on Priv. Int'l L. (updated Mar. 21, 2024), https://www.hcch.net/en/instruments/conventions/status-table/?cid=17 (listing contracting parties). Article 1 of the Convention states that it "**shall apply in all cases**, in civil or commercial

matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad"; however, the Convention "shall not apply where the address of the person to be served with the document is not known." Hague Service Convention art. 1, 20 U.S.T. at 362 (emphasis added).

To determine whether the Hague Convention does in fact apply in the case, the court must assess whether Plaintiff has made "reasonably diligent efforts to ascertain and verify defendant's mailing address." *NBA Props., Inc. v. P'ships & Unincorporated Ass'ns Identified in Schedule "A"*, 549 F. Supp. 3d 790, 796 (N.D. Ill. 2021); *See also Peanuts Worldwide LLC v. Partnerships & Unincorporated Associations Identified on Schedule "A"*, 347 F.R.D. 316, 327 (N.D. Ill. 2024). "[R]easonable diligence" generally requires that the plaintiff "ha[ve] attempted to obtain [the defendant's] address in a variety of ways." *Smart Study Co. v. Acuteye-Us*, 620 F. Supp. 3d 1382, 1391 (S.D.N.Y. 2022) (citation and internal quotation marks omitted), *appeal dismissed sub nom. Smart Study Co. v. HAPPY PARTY-001*, No. 22-1810-CV, 2023 WL 3220461 (2d Cir. May 3, 2023); *See also Peanuts Worldwide LLC*, 347 F.R.D. at 327–28 (N.D. Ill. 2024).

Here, Plaintiff, a Chinese limited liability company with its principal place of business in Guangdong, China, sought to serve the Moving Defendants whose business addresses are located in China as identified on their publicly accessible Amazon or Walmart seller profiles. *See* accompanying Declaration of Haipeng Xiao ("Xiao Decl.") at ¶ 2. The registered Amazon or Walmart business address of each Defendant is easily accessible and known to the general public (including Plaintiff through minimum, "reasonable diligence"), in its seller profile by simply clicking each Defendant's hyperlinked name in its product listing webpage(s). *Peanuts Worldwide LLC*, 347 F.R.D. at 327–28 (N.D. Ill. 2024). Therefore, the Hague Convention applies.

Though Plaintiff may argue, and in fact did allege in the companying Declaration of He Cheng at ¶¶ 4 – 5 for the Motion for Electronic Service of Process, that "even if a purported address

is provided on an e-commerce store, it is unlikely to be legitimate," and "[a]s such, even if a physical address is available, it is not a reliable or the best means for providing notice to Defendants." Dkt. 10. However, the physical addresses do not need to be a more reliable means of reaching Defendants than email; it is sufficient to establish that each Moving Defendant has at least one "known" address such that the Hague Service Convention applies. *Peanuts Worldwide LLC*, 347 F.R.D. at 328 (N.D. Ill. 2024) (holding that "evidence does not necessarily prove that this address is a more reliable means of reaching Defendant than email, but it is sufficient, in the court's view, to establish that Defendant has at least one "known" address such that the Hague Service Convention applies").

**B. Electronic Service is "Prohibited" by the Hague Convention.**

The Supreme Court has stated that the drafters of the Hague Service Convention intended to prohibit a method of service not mentioned in its text. *Luxottica Grp. S.p.A. v. Partnerships & Unincorporated Associations Identified on Schedule "A"*, 391 F. Supp. 3d 816, 825 (N.D. Ill. 2019). The Court took a broad view of the Convention in 1988, holding that it "**pre-empts** inconsistent methods of service ... [wherever] it applies." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. at 699, 108 S. Ct. 2104 (emphasis added). The court reaffirmed that holding, quoting this language verbatim, in 2017. *Water Splash*, 137 S. Ct. at 1507 (holding that "the Hague Service Convention **specifies certain approved methods of service** and **'pre-empts inconsistent methods of service' wherever it applies**) (emphasis added).

Courts generally approach the issue of whether email service is inconsistent with the Hague Convention and therefore should be pre-empted (i.e., prohibited) through the prism of Article 10(a) of the Convention. *Luxottica Grp. S.p.A.*, 391 F. Supp. 3d at 826. Article 10(a) says that

"[p]rovided the State of destination does not object, the present Convention shall not interfere with ... the freedom to send judicial documents, by postal channels, directly to persons abroad."

China formally objects to all methods of service identified under Article 10, including service by mail under Article 10(a).[1] Importantly, the Ministry of Justice, China's central authority designated under Article 2 of the Convention to receive and deliver process[2], has officially clarified, through an FAQ published on its official website (the "**FAQ**"), that **China's objection to Article 10 forbids any direct service by foreign authorities or parties on parties in China**, **including service via email**, and requires that a request for service be made to the Ministry of Justice or Ministry of Foreign Affairs so a Chinese People's Court will serve parties in China on behalf of the requesting person:

> 1. **Can foreign judicial authorities or individuals serve documents** directly to parties in China **via** international mail, fax, **email**, etc.?
>
> A: **No**. According to China's Civil Procedure Law, foreign judicial organs or individuals cannot directly serve documents on parties in China. **They must submit a request to the Ministry of Justice or the Ministry of Foreign Affairs** through treaty channels or diplomatic channels, and the Chinese People's Court will serve them on their behalf. When China joined the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, it made a reservation to Article 10, opposing service by mail in China.

---

[1]    *See* Official Website of the Hague Conference on Private International Law, https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=393&disp=resdn (reprinting China's formal opposition to "the service of documents in the territory of the People's Republic of China by the methods provided by Article 10 of the Convention"); *see also Mapping Your Future, Inc. v. Mapping Your Future Services, Ltd.*, 226 F.R.D. 305, 308 (D.S.D. 2009) ("[T]he court finds that sending a copy of a summons and complaint by [electronic] mail to a defendant in a foreign country is not a method of service of process permitted by the Hague Convention.").

[2] *See China - Central Authority & practical information,* the Official Website of the Hague Conference on Private International Law, https://www.hcch.net/en/states/authorities/details3/?aid=243 (listing the Ministry of Justice as China's central authority).

*Frequently Asked Questions on International Civil and Commercial Judicial Assistance*, https://www.moj.gov.cn/pub/sfbgw/jgsz/jgszzsdw/zsdwsfxzjlzx/sfxzjlzxxwdt/202303/t20230330 _475371.html (last visited March 19, 2025) (emphasis added); *See also* Xiao Decl. at ¶ 3.

China's Ministry of Justice further states in the FAQ that: (i) direct service on parties in China via email is deemed invalid under Chinese law, (ii) a judgment issued from such service shall not be recognized and enforced, and (iii) parties must serve process in accordance with the Hague Convention.

> 2. **How should parties in China**, especially Chinese enterprises or citizens, **handle judicial documents delivered** by foreign judicial authorities or judicial personnel **via** international mail, fax, **email**, etc.?
>
> Answer: **This method of service is invalid under Chinese law**. If a foreign court issues a judgment based on this, and if the judgment involves an application for recognition and enforcement in China, **the service link will be regarded as a procedural defect by our court, and the judgment will not be recognized and enforced**. The parties should explain the provisions of Chinese law to the foreign court in a timely manner and **ask it to effectively serve the case in accordance with the provisions of the treaty**.

*Id*. (emphasis added).

Further, Articles 87 and 92 of China's Civil Procedure Law of the People's Republic of China (the "**P.R.C. Civil Procedure Law**") prohibit serving process by e-mail **without a defendant's consent**, and also prohibit service by website publication **unless a plaintiff has exhausted other means of service**. *See* Art. 87 & Art. 92, Civil Procedure Law of the People's Republic of China (Revised in 2017), https://cicc.court.gov.cn/html/1/219/199/200/644.html (emphasis added):

> Article 87 **Subject to the consent of the person on which a procedural document is to be served**, **the document may be served by way of** facsimile, **electronic mail or any other means** through which the receipt of the document may be acknowledged, with the exception of judgments, rulings and mediation statements

Article 92 If **the whereabouts of the person to be served are unknown, or if a document cannot be served by any other method** provided for in this Section, **the document shall be served by public announcement.** The document shall be deemed to have been served when 60 days have elapsed since the date of the public announcement.

Pursuant to Article 277 of the P.R.C. Civil Procedure Law, "no foreign agency or individual may, **without the consent of the competent authorities of the People's Republic of China**, serve documents ... within the territory of the People's Republic of China." *Id*. at Art. 277 (emphasis added).

Therefore, because China's objection to Article 10(a) incorporates its objection to service via email or electronic publication, Plaintiff's service of process in the instant case by email and/or electronic publication is an inconsistent method of service pre-empted, and therefore prohibited, by the Hague Convention. *Water Splash*, 137 S. Ct. at 1507

**C. This Court Has Adopted the Position that the Hague Convention Prohibits Service on Parties in China via Email When Granting a Motion to Dismiss in *Luxottica Group S.p.A.*, and *Peanuts Worldwide LLC* Should Be Distinguished from the Instant Case.**

This Court sitting in *Luxottica Grp. S.p.A. v. Partnerships & Unincorporated Associations Identified on Schedule "A"*, 391 F. Supp. 3d 816, 826–27 (N.D. Ill. 2019) held that if a country – such as China – has affirmatively objected to the alternative means of service listed in Article 10(a) of the Convention, this must be construed as an objection to service by email as well. Therefore, Defendants' motion to dismiss was granted for insufficient service of process. *Id*.

However, in deciding a motion to vacate the default judgment filed by Defendant "Electrician Guy" (the "**Peanuts Defendant**") in *Peanuts Worldwide LLC v. Partnerships & Unincorporated Associations Identified on Schedule "A"*, 347 F.R.D. 316, 328 (N.D. Ill. 2024), the same Court held that electronic service is not "prohibited" by the Convention.

*Peanuts Worldwide LLC* should be distinguished from the instant case. First of all, the Peanuts defendant entered appearance and filed the motion to vacate two months after the default judgment was entered. *Peanuts Worldwide LLC*, 347 F.R.D. at 320. The Peanuts Defendant's main challenge to the default judgment was based on a procedural defect, i.e., lack of adequate service of process under Rule 4(f) and the Hague Convention. *Id.* Granting the *Peanuts* moving defendant's motion to vacate will disturb finality of default judgments issued in hundreds of, if not thousands of, Schedule A cases, implicating millions of default foreign sellers residing outside the United States. Second, the Peanuts Defendant had no "prima facie defense to the action on the merits" worthy of disturbing the default judgment. *Id.* at 333. Third, the Court did not discuss the FAQ published by China's Ministry of Justice and the relevant articles in the P.R.C. Civil Procedure Law concerning whether service via email or electronic publication is an inconsistent method of service under the Hague Convention as discussed above, and therefore on that occasion when deciding to the motion to vacate, concluded that "[a]bsent controlling precedent on the issue … the Convention does not prohibit service by email." *Id.* at 330.

In comparison, the Moving Defendants in the instant case entered appearance and filed this motion to dismiss in time. No default has been entered against any Moving Defendants. Allowing the Moving Defendant's motion to dismiss will not disturb finality of any default judgments issued in previous Schedule A cases filed within this district. Prima facie meritorious defenses, such as misjoinder, patent non-infringement, patent invalidity as anticipated by prior art, etc., may be raised by the Moving Defendants as the investigation and the discovery are ongoing, considering the case is still at the early pleading stage.

**II.**     **Plaintiff's Complaint Provides "Mere Labels and Conclusions or a Formulaic Recitation of the Elements of a Cause of Action," and Therefore Should Be Dismissed for Failure to State a Claim That Is Plausible on Its Face.**

### A. The *Twombly/Iqbal* Pleading Standard

Under Fed. R. Civ. P. 12(b)(6), a party may move for "failure to state a claim upon which relief can be granted." In patent cases, the standards applicable to motions under Rule 12(b)(6) are those articulated by the regional Court of Appeals rather than any uniform standard set by the Federal Circuit. *Atlas IP, LLC v. Exelon Corp.*, 189 F. Supp. 3d 768, 771 (N.D. Ill. 2016), *aff'd sub nom. Atlas IP, LLC v. Commonwealth Edison Co.*, 686 F. App'x 921 (Fed. Cir. 2017).

While the Court generally construes the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff, the Court is not required to "accept as true legal conclusions or unwarranted factual inferences." *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1331 (Fed. Cir. 2012). Because the focus of Rule 12(b)(6) motions is on the pleadings, they "can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice" *Geinosky v. City of Chicago*, 675 F.3d 743, 745–46 n. 1 (7th Cir. 2012).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the pleaded facts must, when accepted as true, state a claim for relief that is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff "must give enough details about the subject-matter of the case to present a story that holds together." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir.2011). In other words, the pleaded facts must allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice." *Id*. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Merely pleading facts that are consistent with liability or stating legal conclusions is not sufficient. *Id.*

To prove direct infringement, a plaintiff must establish that each and every limitation of an asserted patent claim is found in the accused product. *ACCO Brands, Inc. v. Micro Sec. Devices*, Inc., 346 F.3d 1075, 1080 (Fed. Cir. 2003) ("Literal infringement requires that every element of the invention as claimed is present in the accused device."). So to adequately plead a claim for direct infringement, courts have required the plaintiff present factual allegations leading to a reasonable inference that the accused product meets each and every limitation of the asserted claims. *Atlas IP, LLC*, 189 F. Supp. 3d at 771; *see also Nu-You Technologies, LLC v. Beauty Town Int'l Inc.*, No. 3:15-cv-03433-N, 2016 WL 4717991, at *2 (N.D. Tex. July 7, 2016) (dismissing claim for direct infringement because plaintiff did "not plausibly allege[] that [defendant] performed every step of the method claimed in the [patent]"); *TeleSign Corp. v. Twilio, Inc.*, No. 16-2106, 2016 WL 4703873, at *3 (C.D. Cal. Aug. 3, 2016) (citations and internal quotations omitted) ("[A] plaintiff must include allegations sufficient to permit [the] court to infer that the accused product infringes each element of at least one claim."). A complaint that fails to provide factual allegations that demonstrate how the features of the accused products plausibly meet the claim limitations is insufficient and must be dismissed or refiled. *Novitaz, Inc. v. inMarket Media, LLC*, No. 16-cv-06795-EJD, 2017 WL 2311407, at *4 (N.D. Cal. May 26, 2017) (dismissing a case because the plaintiff failed to "map" the features of the accused product "onto any elements of any of the claims of the [] patent").

To prove indirect infringement, a plaintiff must establish both a predicate act of direct infringement and that the defendant "specifically intended [another party] to infringe the [] patent and knew that the [other party]'s acts constituted infringement." *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012). In order to state a claim for induced infringement, the plaintiff must plausibly allege (1) that a third party, or the defendant in combination with a third party, has performed acts sufficient to constitute infringement; (2) that the defendant knew of the patent and that the acts in question would infringe; and (3) that the defendant had specific intent to encourage the third party's infringement. *See Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1306 (Fed.Cir.2012); *DSU Medical Corp. v. JMS Co.*, 471 F.3d 1293, 1304–06 (Fed. Cir. 2006); *MEMC Elec. Materials, Inc. v. Mitsubishi Material Silicon Corp.*, 420 F.3d 1369, 1378 (Fed. Cir. 2005). The specific intent necessary to induce infringement "requires more than just intent to cause the acts that produce direct infringement . . . the inducer must have an affirmative intent to cause direct infringement." *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006). There must be some showing of the defendant taking "affirmative steps to bring about the desired result [of infringement]." *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 760 (2011). "[G]eneric allegations that defendant provides instructional materials along with the accused products, without more, are insufficient to create a reasonable inference of specific intent for the purposes of an induced infringement claim." See *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, No. 6:14-cv-00752-JRG-JDL, 2015 WL 4910427, at *4 (E.D. Tex. Aug. 14, 2015).

### B. The Complaint Fails the Twombly/Iqbal Pleading Standard

This Complaint listed 8 defendants in mere 10 pages, being replete with mere conclusory, vague statements and allegations, and was nothing but mere labels and conclusions or a formulaic recitation of the elements of a cause of action. Dtk. 1. For example, ¶ 22 of the Complaint states:

"Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Infringing Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff, have jointly and severally, knowingly and willfully offered for sale, sold, and/or imported into the United States for subsequent resale or use the same product that infringes directly and/or indirectly the '099 patent. Each e-commerce store operating under the Seller Aliases offers shipping to the United States, including Illinois, and, on information and belief, each Defendant has sold Infringing Products into the United States and Illinois over the Internet."

¶ 23 of the Complaint states:

"Defendants' infringement of the '099 patent in the making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use of the Infringing Products was willful. Defendants' infringement of the '099 patent in connection with the making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use of the Infringing Products, including the making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use of Infringing Products into Illinois, is irreparably harming Plaintiff."

¶ 25 of the Complaint states:

"Defendants are making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use Infringing Products that infringe at least claim 1 of the '099 patent. Upon examination of the Infringing Product, each element of claim 1 of the '099 patent is met and practiced by the Infringing Products."

Plaintiff simply copied and pasted its boilerplate complaint template used in hundreds, if not thousands, of Schedule A cases, and filed it again against the 8 defendants in the instant case, without even bothering to spend minimum time customizing the language to target each defendant or its accused products (and certainly, it is incapable of doing so here). However, Plaintiff wants to waste the Court's time and drag the Moving Defendants into full-blown discovery and claim construction with the sole aim to forcing a lucrative settlement. The Complaint simply does not allow the Court to draw any reasonable inference that the accused products possibly infringe. Even

if Plaintiff might argue it filed alleged infringing evidence on December 21, 2024 (Dkt. 5), it does not form part of the Complaint; neither was it referenced or incorporated in the Complaint. Therefore, considering the December 21, 2024 evidence in deciding this motion to dismiss is unnecessary and should be avoided. Worst of all, Plaintiff could have filed an amended complaint on December 12, 2024, but deliberately chose not to do so and yet still wants to waste this Court's judicial resources to force lucrative settlements for its own financial gain.

In Sum, the Complaint does not state a claim that is "plausible on its face," provides mere labels and conclusions or a formulaic recitation of the elements of a cause of action, and should be dismissed for failing the Twombly/Iqbal pleading standard.

## III.   **CONCLUSION**

Based on the foregoing, the Moving Defendants respectfully request that this Court dismiss Plaintiffs' Complaint with prejudice.

Dated: March 19, 2025

Respectfully submitted

*/s/Haipeng Xiao*
Haipeng Xiao
ISREAL IP LEGAL INC. LIMITED
New York Bar No. 5659487
STE 1601, 16/F., AXA Tower, Landmark East,
100 How Ming Street, Kwun Tong, Kowloon
Hong Kong, 999077
Email: henryxiao@isrealip.legal
Phone: 314 390 5182

***Attorney for Defendants Fandliss Store (No. 3)
and TY-US Co. Ltd (No. 8)***

## CERTIFICATE OF SERVICE

I hereby certify that on March 19, 2025, a true and correct copy of the foregoing document was forwarded to all counsel of record in accordance with the Federal Rules of Civil Procedure.


*/s/ Haipeng Xiao*
Haipeng Xiao