**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **Guangdong Aoyun Technology Co Ltd** | **CIVIL ACTION NO. 1:24-cv-12808** |
| **Plaintiff,** | **Honorable Judge Matthew F. Kennelly** |
| **v.** | **JURY TRIAL DEMANDED** |
| **The Partnerships and Unincorporated Associations Identified on Schedule A** | |
| **Defendants.** | |

## DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS

Defendants Warm Embrace of Fandliss Store (No. 3) and TY-US Co. Ltd (No. 8) (collectively, "**Defendants**" or the "**Moving Defendants**"), by and through their undersigned counsel, for their Reply in Support of their Motion to Dismiss, respectfully state the following:

## INTRODUCTION

The Moving Defendants filed a motion to dismiss on March 19, 2025. [Dkt. 34].

Plaintiff Guangdong Aoyun Technology Co Ltd ("**Plaintiff**") filed its response in opposition to the motion to dismiss (the "**Response**") on April 3, 2025. [Dkt. 39].

First, Plaintiff argued in its Response that it properly effectuated service in compliance with Fed. R. Civ. P. 4(f)(3). However, the alternative methods of service under Rule 4(f)(3) cannot be prohibited by international agreements, and service of process on the Moving Defendants in China by email and electronic publication violates the Hague Convention and therefore is prohibited..

Second, Plaintiff's Response argues that the Complaint adequately stated a claim for patent infringement. However, Plaintiff's Complaint merely stated the asserted patent, identified **no infringing product** whatsoever, and contained **ZERO factual allegations** leading to a reasonable inference that the accused product meets each and every limitation of the asserted claim(s). [Emphasis Added]. The Complaint consists of nothing but boilerplate template language that has been consistently copied and pasted in complaints by the Schedule A plaintiffs in this District.

Furthermore, the Moving Defendants did not violate the Court's Preliminary Injunction orders. Whether the Moving Defendants allegedly violated the injunction orders is also irrelevant to the Motion to Dismiss, especially considering discovery has not commenced and the case is still at the early pleading stage.

<u>**ARGUMENTS**</u>

I.     <u>**Plaintiff's Service of Process Was Not Proper and Did Not Comply with Rule 4(f)(3)**</u>

In the *ex parte* Motion for Electronic Service of Process (Dkt. 9), Plaintiff relied on Fed. R. Civ. P. 4(f)(3) to seek the Court's authorization to serve Defendants by email and electronic publication. Fed. R. Civ. P. 4(f)(3) authorizes service "by other means not prohibited by international agreement, as the court orders." The relevant international agreement in the instant case is the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163 (the "**Convention**," the "**Hague Convention**," or the "**Hague Service Convention**"), which prohibits service of process on the Moving Defendants located in China via email and/or electronic publication, as explained in the Moving Defendants' motion to dismiss. [Dkt. 39]. Fed. R. Civ. P. 4(f)(3) limits the court's discretion in ordering alternative methods of service to those not prohibited by the Hague Convention.

The Moving Defendants do not submit that the alternative service ordered by the Court pursuant to Fed. R. Civ. P. 4(f)(3) must comply with the law of a foreign state where the service is to be effected. Rather, the Moving Defendants argue that China's domestic law, along with the FAQ published by China's Ministry of Justice, substantiate the Defendants' position that China's formal objection to service by mail under Article 10(a) of the Hague Convention also encompasses the objection to service of process by email and/or electronic publication. Accordingly, the Hague Convention prohibits service of process by Plaintiff on the Moving Defendants in China via email and electronic publication.

***First***, Plaintiff argues there is no known address for the Walmart storefront TY-US Co. Ltd, because the registered address in its Walmart seller profile cannot be found on Google Maps. [Dkt. 39-1]. This allegation is erroneous.

Chinese addresses are expressed in Mandarin, and "longgangqu bantianjiedao dafapushequ bulonglu 626hao" is simply the phonetic representation (i.e., Pinyin) of the Mandarin address. Translated, it means Longgang District, Bantian Street, Dafang Community, Bulong Road, No. 626. While the translated version might be more familiar to English speakers, the Pinyin format – longgangqu bantianjiedao dafapushequ bulonglu 626hao – is far more practical for Chinese postal workers[1], who may not understand English, to accurately locate the delivery or service address.

Further, the Walmart's seller profile includes the city Shenzhen and the postal code GD 518000[2], both of which help route the process to the right region of China. *See* Exhibit 1. This allows a Chinese Hague Convention service officer to accurately identify and effect service at the address expressed in Pinyin.

---

[1] More precisely, it should be the Chinese judicial officials – rather than postal workers – who are authorized to serve foreign process under the Hague Convention.
[2] GD stands for Guangdong Province in China.

Google Maps is blocked in China. The fact that an app which does not work at all in China cannot locate a Chinese address expressed in Pinyin (i.e., the phonetic format) does not render the address invalid. Moreover, a known physical address does not need to be a more reliable means of reaching Defendants than email; it is sufficient to establish that each Moving Defendant has at least one "known" address such that the Hague Service Convention applies. *Peanuts Worldwide LLC v. Partnerships & Unincorporated Associations Identified on Schedule "A"*, 347 F.R.D. 316, 328 (N.D. Ill. 2024) (holding that "evidence does not necessarily prove that this address is a more reliable means of reaching Defendant than email, but it is sufficient, in the court's view, to establish that Defendant has at least one "known" address such that the Hague Service Convention applies").

**_Second_**, Plaintiff accused Defendant "Warm Embrace of Fandliss Store" of changing its Amazon storefront name to "FANDLISS Heated Products Store US-CG" in an alleged attempt to conceal its identity.

The name change was part of a branding strategy implemented around January 15, 2025, before the service of process on the Moving Defendants on January 27, 2025 [Dkt. 19], and was not prompted, nor related to, the instant action filed by Plaintiff. *See* Declaration of Ying Wang ("**Wang Decl.**") at ¶ 3. There was no intention to obscure the identity of the store or its owner, because, inter alia, FANDLISS Heated Products Store US-CG remains the same Amazon store as Warm Embrace Of Fandliss Store, operating under the same Amazon Seller ID A14E6CL6J3S0NY and remaining subject to the same preliminary injunction orders. Wang Decl. at ¶ 4. Neither does this change of store name constitute a violation of the preliminary injunction orders issued by the Court.

**_Third_**, Plaintiff accuses Defendant Warm Embrace of Fandliss Store of violation the Preliminary Injunction orders, because the listing for ASIN B0DBLW8JGZ remains active. This

allegation reflects a fundamental misunderstanding of how Amazon listings (ASINs) operate. Once an Amazon listing – such as https://www.amazon.com/dp/B0DBLW8JGZ – is created, it cannot be removed or taken down by the seller; only Amazon has the authority to do so. Wang Decl. at ¶¶ 5 – 6. Warm Embrace of Fandliss Store, as the ASIN creator, ceased selling the accused products around January 29, 2025, as a result of the enforcement of the temporary restraining order entered by the Court. [Dkt. 29]; *See also* Wang Decl. at ¶¶ 5 – 6. The B0DBLW8JGZ listing remains visible and active on Amazon's platform, because it has not been removed or taken down by Amazon itself, which is beyond the control of Defendant Warm Embrace of Fandliss Store. Wang Decl. at ¶¶ 5 – 6.

**_Lastly_**, Plaintiff argues that the service via email and electronic publication was reasonably calculated to give Defendants notice of the action, as required by Rule 4(f)(3). However, Plaintiff's Motion for Electronic Service of Process was granted in an *ex parte* proceeding by the Court, without the opportunity or the benefit of hearing adversarial opinions.

In Schedule A cases, the e-commerce platforms – such as Walmart and Amazon – typically deactivate storefronts after receiving temporary restraining orders from plaintiffs. In the instant case, the Moving Defendants' Walmart and Amazon stores were similarly deactivated. While Schedule A defendants may initially ignore or fail to comprehend plaintiffs' email services, the sellers will ultimately become aware that they have been named as defendants in pending lawsuits, particularly after inquiring with the e-commerce platforms about the reasons for their account suspension and funds restrictions. Importantly, engaging legal counsel to actively defend a Schedule A case does not waive a defendant's right to assert insufficient service of process under Rule 12(b)(5); to hold otherwise would effectively discourage appearance and undermine the very

purpose of Rule 12(b)(5), which is to provide defendants with a procedural mechanism to challenge improper service without penalizing them for participating in their own defense.

**_Therefore,_** Plaintiff failed to raise valid responses to the Moving Defendants' position that service of process via email and electronic publication was insufficient.

## II.   Plaintiff's Complaint Did Not Adequately State a Claim for Patent Infringement

The Complaint alleges patent infringement.

To adequately plead a claim for direct infringement, courts have required the plaintiff present factual allegations leading to a reasonable inference that the accused product meets each and every limitation of the asserted claims. *Atlas IP, LLC v. Exelon Corp., 189 F. Supp. 3d 768*, 771 (N.D. Ill. 2016); *see also Nu-You Technologies, LLC v. Beauty Town Int'l Inc*., No. 3:15-cv-03433-N, 2016 WL 4717991, at *2 (N.D. Tex. July 7, 2016) (dismissing claim for direct infringement because plaintiff did "not plausibly allege[] that [defendant] performed every step of the method claimed in the [patent]"); *TeleSign Corp. v. Twilio, Inc*., No. 16-2106, 2016 WL 4703873, at *3 (C.D. Cal. Aug. 3, 2016) (citations and internal quotations omitted) ("[A] plaintiff must include allegations sufficient to permit [the] court to infer that the accused product infringes each element of at least one claim."). A complaint that fails to provide factual allegations that demonstrate how the features of the accused products plausibly meet the claim limitations is insufficient and must be dismissed or refiled. *Novitaz, Inc. v. inMarket Media, LLC*, No. 16-cv-06795-EJD, 2017 WL 2311407, at *4 (N.D. Cal. May 26, 2017) (dismissing a case because the plaintiff failed to "map" the features of the accused product "onto any elements of any of the claims of the [] patent").

In order to state a claim for induced infringement, the plaintiff must plausibly allege (1) that a third party, or the defendant in combination with a third party, has performed acts sufficient

to constitute infringement; (2) that the defendant knew of the patent and that the acts in question would infringe; and (3) that the defendant had specific intent to encourage the third party's infringement. *See Akamai Techs., Inc. v. Limelight Networks, Inc*., 692 F.3d 1301, 1306 (Fed.Cir.2012); *DSU Medical Corp. v. JMS Co*., 471 F.3d 1293, 1304–06 (Fed. Cir. 2006); *MEMC Elec. Materials, Inc. v. Mitsubishi Material Silicon Corp*., 420 F.3d 1369, 1378 (Fed. Cir. 2005). The specific intent necessary to induce infringement "requires more than just intent to cause the acts that produce direct infringement . . . the inducer must have an affirmative intent to cause direct infringement." *DSU Med. Corp. v. JMS Co*., 471 F.3d 1293, 1306 (Fed. Cir. 2006). There must be some showing of the defendant taking "affirmative steps to bring about the desired result [of infringement]." *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 760 (2011).

*__First__*, Plaintiff's Complaint met none of the above pleading requirements. It only identified the defendants' names and the asserted patent, let alone mapping any features of the accused product onto any elements of any claims of the asserted patent, and stated nothing else but conclusory, vague statements and allegations, which have been repeatedly copied and pasted in Schedule A complaints filed in this District. The court sees similar, if not identical, language in this Complaint as in other cases, which fails to allow the Court to draw any reasonable inference that the accused products possibly infringe.

In particular, ¶ 25 of the Complaint, which Plaintiff referenced in its Response, was nothing but mere labels and conclusions or a formulaic recitation of the elements of a cause of action:

> "Defendants are making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use Infringing Products that infringe at least claim 1 of the '099 patent. Upon examination of the Infringing Product, each element of claim 1 of the '099 patent is met and practiced by the Infringing Products."

*__Second__*, Plaintiff might have allegedly identified the accused infringing products through the links provided in Schedule A [DKt. 4], which was designed and intended solely to name

defendants. Even if this argument were meritorious, allowing such a pleading style would effectively hold that a patent infringement complaint is sufficiently pled by providing a link to an accused product in a schedule and identifying the asserted patent in the main body of the complaint.

Plaintiff had a second chance to amend its Complaint in response to the Moving Defendants' motion to dismiss, but deliberately chose not to do so, and **instead, used conclusory, generic boilerplate response language again in its Response, asserting it sufficiently pled the complaint without even providing any customized infringement details**; **neither has Plaintiff said "Thank you" to this Court for wasting the Court's judicial resources to pursue lucrative settlements for its own financial gain**. [Emphasis Added].

In Sum, the Complaint does not state a claim that is "plausible on its face," provides mere labels and conclusions or a formulaic recitation of the elements of a cause of action, and should be dismissed for failing the Twombly/Iqbal pleading standard.

## III.   **CONCLUSION**

Based on the foregoing, the Moving Defendants respectfully request that this Court dismiss Plaintiffs' Complaint with prejudice.

Dated: April 11, 2025

Respectfully submitted

*/s/Haipeng Xiao*
Haipeng Xiao
ISREAL IP LEGAL INC. LIMITED
New York Bar No. 5659487
STE 1601, 16/F., AXA Tower, Landmark East,
100 How Ming Street, Kwun Tong, Kowloon
Hong Kong, 999077
Email: henryxiao@isrealip.legal
Phone: 314 390 5182

***Attorney for Defendants Fandliss Store (No. 3)
and TY-US Co. Ltd (No. 8)***

## CERTIFICATE OF SERVICE

I hereby certify that on April 10, 2025, a true and correct copy of the foregoing document was forwarded to all counsel of record in accordance with the Federal Rules of Civil Procedure.


*/s/ Haipeng Xiao*
Haipeng Xiao